UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                :

SABINE ZAHN, individually and on behalf of all others  :
similarly situated,

                                :

                Plaintiff,         :

                                :

               -v-              :         24 Civ. 9271 (JPC)

                                :

                                :         <u>OPINION AND ORDER</u>

THE BOLIVARIAN REPUBLIC OF VENEZUELA,  :

                                :

               Defendant.     :

                                :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Sabine Zahn brings this action against Defendant the Bolivarian Republic of Venezuela ("Venezuela") alleging breach of contract for Venezuela's failure to pay the principal and interest owed on sovereign bonds. With discovery closed, Zahn now moves to certify a class, to be appointed its lead plaintiff, and to appoint Duane Morris LLP as class counsel. For the reasons that follow, the Court denies the motion.

## I. Relevant Background

      In 2004, Venezuela issued a series of 9.375% sovereign bonds under ISIN No. US922646BL74 (the "BL74 Bonds") pursuant to a 1998 Fiscal Agency Agreement (as amended, the "1998 FAA"). Dkt. 16 ("Am. Compl.") ¶ 2; Dkt. 18 ("Answer") ¶ 2. The BL74 Bonds' original maturity date was January 13, 2034, with interest payments due twice yearly on January 13 and July 13. Am. Compl. ¶ 3. As alleged, Venezuela first failed to remit a required interest payment on January 13, 2018, and has not made interest payments since. *Id.* ¶¶ 17-18. Under the terms of the BL74 Bonds, upon Venezuela's failure to pay interest, principal, or other amounts within thirty

days of their due date, holders of twenty-five percent or more in the aggregate outstanding principal of that bond series may, by written demand, declare the bonds immediately due and payable, whereupon the entire unpaid principal and accrued unpaid interest becomes immediately payable (the "Acceleration Provision"). *Id.* ¶¶ 19-20. On December 6, 2018, holders of more than twenty-five percent of the outstanding principal amount of the BL74 Bonds invoked the Acceleration Provision and declared these bonds immediately due and payable pursuant to a written demand. *Id.* ¶ 22.

Five years and eleven months later, on November 12, 2024, Zahn's husband acquired BL74 Bonds with a face amount of $10,000 and placed them in her name, making her their beneficial owner, "in order to expand [her] portfolio and to protect the investment and legal positions of investors through a class action." Dkt. 34 ("Zahn Decl.") ¶ 11; *accord* Dkt. 50, Exh. 3 ("Zahn Dep. Tr.") at 36:1-3. Zahn and her husband—who principally manages both of their investments— had learned in September 2024 from their counsel in other sovereign bond actions that the statute of limitations for actions based on the BL74 Bonds would expire on December 6, 2024. *See* Zahn Decl. ¶¶ 8, 10, 11 (Zahn attesting that she learned in September 2024 that the six-year limitations period was approaching because the principal repayment date had been accelerated to December 6, 2018). Ten days after buying the bonds, Zahn signed an "Agreement for Class Action Legal Services and Contingent Fee Arrangement" with Duane Morris LLP as well as with two other attorneys, Michael C. Spencer and Patricia Rosito Vago. *Id.* ¶ 12; *see* Dkt. 54 ("Spencer Decl.") ¶ 3 (explaining that he and Vago are "supporting counsel" and do not intend to appear as counsel of record).

Zahn commenced this action on December 5, 2024, Dkt. 1, and filed the Amended Complaint on September 2, 2025, Dkt. 16. Venezuela filed an Answer to the Amended Complaint

2

on September 16, 2025.  Dkt. 18 ("Answer").  Discovery concluded on May 15, 2026.  *See* Dkts. 47, 48.

On January 12, 2026, Zahn moved to certify a class of all holders of BL74 Bonds as of December 5, 2024, who continue to hold the bonds thereafter.  Dkts. 33-37, 38 ("Motion").  The motion also seeks appointment of Zahn as class representative and Duane Morris LLP, Zahn's counsel, as class counsel.  Motion at 16.  Zahn attached to her motion declarations from herself, Dkt. 34; Anthony J. Constantini, a partner at Duane Morris LLP, Dkt. 35; Hector Fernandez, an attorney with expertise in Venezuelan law, Dkt. 36; and William W. Wickersham, Senior Vice President of RG/2 Claims Administration LLC with expertise in claims processing using the Depository Trust & Clearing Corporation ("DTCC"), Dkt. 37 ("Wickersham Decl.").  Venezuela opposed on May 21, 2026, Dkt. 49 ("Opposition"), and attached a declaration from its counsel, Camilo Cardozo, Dkt. 50.  Zahn filed a reply on June 22, 2026.  Dkts. 53, 56 ("Reply").

## II.  Legal Standards

A plaintiff seeking to certify a class must prove that the proposed class action satisfies the four elements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  *See Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010); *see also Mazzaccone v. Bolivarian Republic of Venezuela*, No. 24 Civ. 6168 (DLC), 2026 WL 444752, at *2 (S.D.N.Y. Feb. 17, 2026).  The plaintiff must also satisfy the "implied requirement of ascertainability."  *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).  Upon satisfying the elements of Rule 23(a), the plaintiff must then "show that the proposed class action can proceed under one of the categories of Rule 23(b)."  *Mazzaccone*, 2026 WL 444752, at *2.

3

Zahn seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). "The district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citation modified). "If, after a 'rigorous analysis' the court finds that each of the requirements of Rule 23 are met, the court may, in its discretion, certify the class." *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM), 2020 WL 5796763, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006)).

### III. Discussion

#### A.    Class Certification

Zahn seeks to certify a class of "all holders of the BL74 Bonds on [December 5, 2024] who continue to hold thereafter." Motion at 1. Class actions to enforce defaulted sovereign bonds are not foreign to this District. In *Seijas v. Republic of Argentina*, the Second Circuit affirmed the district court's "straightforward[]" grant of class certification to eight classes of holders of defaulted Argentine bonds. 606 F.3d at 55. Earlier this year, in an action brought by some of the same attorneys who represent Zahn, the Honorable Denise L. Cote certified a class of creditors who held two other series of defaulted Venezuelan bonds. *See Mazzaccone*, 2026 WL 444752, at *2-4.

But for reasons that follow, even if a class action may be appropriate and arguably standard in this context, Zahn "is not the plaintiff who should be controlling the representation of the class."

4

*In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at \*1.  Although Zahn satisfies ascertainability, numerosity, and commonality, she falls short of Rule 23(a)'s typicality and adequacy requirements because Venezuela has shown a sufficiently meritorious defense that could defeat her entire claim and because Zahn's involvement in this litigation has been minimal.

### 1.      Rule 23(a) Requirements

#### i.        Ascertainability

The Second Circuit reads Rule 23 to imply that the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *Brecher*, 806 F.3d at 24 (citation modified).  Ascertainability is a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way."  *Petrobras Sec.*, 862 F.3d at 269.  Venezuela does not contest that Zahn has articulated a sufficiently definite class to satisfy this element.  *See generally* Opposition; *see also id.* at 21 n.75 (declining to challenge this element).

The putative class is defined by two "objective criteria," *Petrobras Sec.*, 862 F.3d at 269— the bondholders' beneficial ownership of the BL74 Bonds on December 5, 2024, and their continued ownership since that date.  *See* Motion at 8.  Identifying class members will be administratively feasible, as putative class members may identify themselves by providing ownership records or by sworn affidavit.  *See In re Tether & Bitfinex Crypto Asset Litig.* ("*Tether & Bitfinex*"), No. 19 Civ. 9236 (KPF), 2026 WL 629826, at \*20 (S.D.N.Y. Mar. 6, 2026); *see also* Motion at 8-9; Wickersham Decl. ¶¶ 4-8, 10 (describing the "layered" record-keeping system of the DTCC and its intermediaries concerning the beneficial interests).  Zahn's proposed class is therefore "sufficiently definite."  *Brecher*, 806 F.3d at 24 (citation modified).

### ii.  Numerosity

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Tether & Bitfinex*, 2026 WL 629826, at \*20 (quoting Fed. R. Civ. P. 23(a)(1)). "Courts in this Circuit presume numerosity at 40 putative class members." *Id.* (citation modified). "That said, the movant need not provide a precise quantification of their class, since a court may make common sense assumptions to support a finding of numerosity." *Id.* (citation modified).

Zahn estimates that there are at least hundreds of putative class members given that Venezuela issued $1.5 billion in BL74 Bonds. Motion at 6 & n.4 (collecting cases involving BL74 Bonds). As Venezuela does not contest that estimate, *see generally* Opposition, the Court concludes that Zahn satisfies numerosity as well. *See Mazzaccone*, 2026 WL 444752, at \*2 ("Given the aggregate value of the bonds at issue and the existence of multiple related individual actions, the proposed classes are sufficiently numerous."); *see also In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 445 (S.D.N.Y. 2013) (finding numerosity was satisfied where there were "over $1.88 billion in Winstar bonds outstanding during the class period").

### iii.  Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Barrows v. Becerra*, 24 F.4th 116, 130 (2d Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). "A single common question of fact or law suffices to satisfy this element." *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 3d 416, 458 (S.D.N.Y. 2025) (citing *Dukes*, 564 U.S. at 359).

The dispute here centers on Venezuela's failure to pay its obligations under the BL74 Bonds' terms and the 1998 FAA. *See Mazzaccone*, 2026 WL 444752, at \*1-2; *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2013 WL 12224042, at \*9 (S.D.N.Y. July 12, 2013)

(explaining, when certifying a class of holders of a standard life insurance policy, that "[b]reach of contract cases are particularly appropriate for class certification"). Venezuela's alleged failure to fulfill its obligations to pay the BL74 Bonds' principal and accelerated interest is a common question that applies to all putative class members. *See Seijas*, 606 F.3d at 58. So would be any sovereign-immunity or statute-of-limitations defense that Venezuela might raise. *See* Motion at 7. Zahn thus satisfies this requirement.

### iv.        Typicality and Adequacy

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and Rule 23(a)(4) requires the lead plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). The typicality requirement "is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows*, 24 F.4th at 131 (citation modified). But typicality and adequacy may not be satisfied, and thus "class certification is inappropriate[,] where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by*, *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). "Regardless of whether the issue is framed in terms of the typicality of the representative's claims, or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* (citation modified); *see Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) ("[C]ourts routinely consider [the unique-defense] argument under the typicality, commonality, and/or . . . adequacy prongs of Rule 23(a).").

"At the class-certification stage, a court's analysis of unique defenses centers" not on their merits, but "on whether these defenses will unacceptably detract from the focus of the litigation to the detriment of absent class members." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).  So to defeat a motion for class certification, a defendant "need not show . . . that the unique defense will prevail," only that it is "meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense," and not "groundless" or "far-fetched." *Lapin*, 254 F.R.D. at 179 (citation modified).  Though this rule "is not rigidly applied in this Circuit" and a plaintiff could "satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him or her that would not impact other class members," courts nevertheless have denied class certification "where a full defense is available against the plaintiff's individual action or where the potential defenses dovetail with the merits of the class action." *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) (citation modified); *see, e.g.*, *Steginsky v. Xcelera, Inc.*, 658 F. App'x 5, 7-8 (2d Cir. 2016) (summary order) (affirming denial of class certification in an action alleging securities fraud based on the plaintiff's "unique susceptibility to the defense of non-reliance"); *cf. Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008) (summary order) (affirming denial of class certification where the district court found the plaintiff to be an inadequate class representative in a products liability action due to alleged evidence spoliation on her part).

Venezuela contends that Zahn is atypical and inadequate on three grounds: she fails to establish her standing to sue, she has not demonstrated sufficient knowledge of and involvement in this litigation, and she is subject to the unique defense of champerty.  Opposition at 10-16.

Though Venezuela's standing argument is unavailing, its unique champerty defense has sufficient merit and could fully defeat Zahn's claim based on the BL74 Bonds.  Because that unique defense, combined with serious doubts about Zahn's personal involvement in this case, defeat Zahn's attempt to satisfy Rule 23(a)'s typicality and adequacy requirements, the Court denies her motion. *See Scott v. N.Y.C. Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355-57 (S.D.N.Y. 2004) (denying class certification for lack of typicality and adequacy based on unique defenses and lack of knowledge).

Starting with standing, Venezuela argues that Zahn's failure to obtain authorization to sue from the registered holder of the BL74 Bonds deprives her of prudential standing.  Opposition at 10-12.  But Venezuela's Answer did not raise any defense based on Zahn's lack of authorization to sue, *see generally* Answer; indeed, Venezuela used the word "standing" only in the context of its champerty defense, *see id.* at 9 ("Under New York's Judiciary Law § 489, Plaintiff lacks standing to bring this action, because, to the extent that Plaintiff is in fact the beneficial owner of the BL74 Bonds, Plaintiff acquired them for the sole purpose of bringing this action.").[1] Arguments based on prudential standing are waivable.  *See United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) ("Unlike constitutional standing, which focuses on whether a litigant sustained a cognizable injury-in-fact, the prudential standing rule . . . bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." (citation modified)).

---

[1] Zahn received an authorization-to-sue letter from the registered holder that granted Citibank U.S., not Zahn, permission to exercise the registered holder's rights.  *See* Reply at 3; *see also* Zahn Decl., Exh. C.  Zahn has represented that this was a mistake and that her counsel is working with the registered holder to obtain the proper authorization.  Reply at 3; Spencer Decl. ¶ 2.  Venezuela has not submitted any evidence indicating otherwise.  The beneficial owner of a bond may commence legal action to enforce the bond terms even before obtaining authorization from the registered holder, *see In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 217 (S.D.N.Y. 2022) (collecting cases), but Zahn should nonetheless swiftly seek authorization and advise the Court once she obtains it.

9

Venezuela thus has waived its standing argument by failing to raise it in its Answer. *See Allan Applestein TTEE FBO D.C.A. Grantor Tr. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005) (holding that the defendant "appears to have waived the argument that the indenture does not give [the plaintiff] standing to sue" and that the court is "inclined to believe that an assertion of a party's incapacity to sue should fall within the class of 'threshold defenses'—issues that must be raised and disposed of at the outset of the suit" (citation modified)); *cf. Commerzbank AG v. Wells Fargo Bank, N.A.*, No. 22-1879-cv, 2024 WL 4554081, at *4 (2d Cir. Oct. 23, 2024) (summary order) (citing *Allan Applestein* and holding that a defendant did not waive its standing defense because, among other things, it pleaded "lack of standing" as an affirmative defense in its answer).

Next, Venezuela challenges Zahn's adequacy based on various statements she made which, according to Venezuela, indicate that she is not sufficiently knowledgeable about and involved in this litigation to protect the interests of the class. Opposition 15-16. The "bar for showing sufficient knowledge is quite low." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012) (citation modified); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009) (disfavoring "attacks on the adequacy of a class representative based on the representative's ignorance"). At the same time, courts may deny class certification "where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995) (citation modified). Moreover, insufficient knowledge and involvement threaten not only adequacy but typicality, as disengaged lead plaintiffs may, "during pretrial discovery and at

trial, . . . give misleading and contradictory testimony with regard to basic issues in the case that might make their claims subject to unique defenses." *Baffa*, 222 F.3d at 61 (citation modified).

Zahn's deposition unveiled her minimal engagement with her lawyers about this case. To be sure, she knows the case's basic facts: the bond series, the face value that she owns, and the approximate interest rate. Zahn Dep. Tr. at 25:4-19. But a class representative also must be sufficiently involved in the action to protect the interests of the class. *See Baffa*, 222 F.3d at 62 (evaluating adequacy based on the plaintiff's familiarity with "the nature of his proposed role in the litigation" and "demonstrated . . . willingness to carry it forward"). As to this sufficient-involvement consideration, Zahn's testimony gives the Court considerable pause. She testified multiple times that her husband—who is not a party in this action—has "taken over" dealings with *her* lawyers. *See* Zahn Dep. Tr. at 68:18-69:1 ("Q. [H]ow often do you talk to your attorneys with respect to the Zahn action? A. My husband . . . has taken over the talking to the attorneys. Q. This is for the BL74 [B]onds? A. Also for that, yes."); *id.* at 69:2-7 ("Q. So for both the Zahn action and the Cavara action– A. For both of them. Q. –your husband does the talking to the attorneys? A. Yes."). When asked how she "determine[d] that Duane Morris would best represent [her] and the class," Zahn responded that she "followed [her] husband's referral or recommendation." *Id.* at 54:10-14. Indeed, Zahn testified that she also "relied on" her husband to research Venezuelan bonds before *he* bought them and named her as their beneficial owner. *Id.* at 34:14-15; *see id.* at 34:9-15, 35:14-36:3; *see also* Motion at 4 ("[Zahn's husband] takes the lead in managing the family's investments."). In sum, Zahn's testimony demonstrates a concerning detachment from her own purported investments and her attorneys' handling of this litigation that calls into question her ability to protect class interests. *See Baffa*, 222 F.3d at 62 (evaluating adequacy based on the plaintiff's interactions with his lawyers); *see also Gordon v. Sonar Cap.*

11

*Mgmt. LLC*, 92 F. Supp. 3d 193, 200-01 (S.D.N.Y. 2015) (holding a proposed lead plaintiff inadequate for his "lack of independent judgment").

The combination of Zahn's aloofness and Venezuela's unique defense of champerty, *see* Opposition at 12-14, is fatal to her assertions of typicality and adequacy. New York's champerty statute makes it unlawful for any "person . . . engaged directly or indirectly in the business of collection and adjustment of claims" to "buy or take an assignment of . . . a bond . . . with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Law § 489(1). An assignment that violates the champerty law is void. *See Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 272 F. Supp. 2d 319, 331 & n.61 (S.D.N.Y. 2003) (collecting cases). To be champertous, the "*primary purpose* of the purchase must be to enable one to bring a suit, and the intent to bring a suit must not be merely incidental and contingent." *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 281 (S.D.N.Y. 2020) (quoting *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1256 (N.Y. 2016)). Thus, where a plaintiff's "primary goal in purchasing the debt was to be paid in full"—that is, to enforce it—courts have "consistently refused to characterize" such purchases as champertous. *Tr. for the Certificate Holders of the Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 556 F.3d 100, 109 (2d Cir. 2009) (citation modified).

The "critical issue" in a champerty defense therefore is "usually a factual one": the "purpose behind the plaintiff's acquisition of rights." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 372 (2d Cir. 2023) (citation modified). A purchaser's willingness to recover the debt outside of court is evidence of a lawful, or non-champertous, purpose. *See, e.g.*, *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (2d Cir. 2009) (affirming summary judgment rejecting a champerty defense where the plaintiff offered uncontroverted proof "that it attempted to collect the debt without litigation"); *Banque de Gestion Privee-Sib v. La Republica de*

12

*Paraguay*, 787 F. Supp. 53, 57 (S.D.N.Y. 1992) (declining to infer champerty where the defendant failed to contravene the plaintiff's showing that it was willing to "negotiat[e], settl[e], or su[e]"). And the mere fact that a person is a plaintiff in multiple suits involving similar financial instruments is insufficient by itself to show that the person violated the champerty law when procuring those instruments. *See Mazzaccone*, 2026 WL 444752, at *3 (finding that the plaintiff was not in the business of collecting claims despite commencing three other lawsuits involving Venezuelan bonds).

The relevant question at this stage is not whether Zahn's purchase of the BL74 Bonds in fact constituted champerty, but rather whether that defense is sufficiently meritorious and "threaten[s] to become the focus of the litigation" to the detriment of the absent class members. *Gary Plastic Packaging Corp.*, 903 F.2d at 180. It is and it does. Without prejudging the ultimate merits of the champerty defense, the Court finds that it is sufficiently meritorious "to require the plaintiff to devote considerable time to rebut" it. *Lapin*, 254 F.R.D. at 179 (citation modified). While Zahn's declaration under penalty of perjury states that her aim when buying the BL74 Bonds and other sovereign bonds was to earn investment returns, *see* Zahn Decl. ¶¶ 6 (attesting that she buys sovereign bonds because "they usually paid a good yield" and are "relatively safe investments"), 15 (explaining that she and her husband buy bonds such as BL74 Bonds "for the purpose of realizing investment returns on them," and "[o]nly in unfortunate circumstances, such as sovereign defaults, do we get involved in litigation to enforce our claims to recover"), 16 ("We acquired and hold all our sovereign debt holdings with the expectation of making investment returns."), that declaration also supports the inference that she and her husband bought the BL74 Bonds in the month before the statutes of limitations ran for the primary purpose of bringing this putative class action. *See id.* ¶¶ 8, 10, 11 (attesting that she learned in September 2024 from her

13

lawyers that the six-year limitations period would expire in December 2024).  As alleged, Venezuela had already defaulted on the BL74 Bonds, so the prospect of recovering on them outside of court likely appeared minimal to Zahn and her husband, especially with the possibility of a looming expiration of the limitations period to bring suits on the defaults, and Zahn does not put forward evidence indicating that she made any such attempt.[2]  Moreover, Zahn herself stated that bringing a class action was one of the reasons she bought the BL74 Bonds when she did.  *Id.* ¶ 11 (attesting that she did so to "expand [her] portfolio and to protect the investment and legal positions of investors through a class action").  And just ten days later, she entered into an "Agreement for Class Action Legal Services and Contingent Fee Arrangement" with counsel, in time for her attorneys to file this action on December 5, 2024, which arguably was the final day of the BL74 Bonds' limitations period.  *Id.* ¶¶ 12-13.  This sequence of events indicates that a lawsuit, and specifically the opportunity to bring a class action, was front of mind for Zahn when she purchased the BL74 Bonds.  *See CIBC Bank & Tr. Co. (Cayman) Ltd. v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1111 (S.D.N.Y. 1995) ("There is no doubt that, given the timing of the filing of suit in this case, it could be inferred that one of the purposes of the assignment was to bring suit.").  And there is no indication that at any point Zahn expected to enforce her interest in any other way, such as negotiation or settlement.  *Cf. SCR Joint Venture*, 559 F.3d at 139; *Banque de Gestion Privee-Sib*, 787 F. Supp. at 57.

---

[2] The parties dispute whether the Venezuelan government has tolled the statutes of limitations applicable to Venezuelan bonds.  *See* Motion at 11-13; Opposition at 6.  The Court need not reach that issue.  For purposes of the instant motion, the possibility that the limitations period expired on December 6, 2024 is relevant only to the extent that it permits a fact-finder to determine Zahn's purpose when buying the BL74 Bonds in November 2024 and filing this action on December 5, 2024.

14

Zahn counters that she is not "in the business of collection and adjustment of claims," so the champerty law does not apply to her. Reply at 4 (quoting N.Y. Jud. Law § 489); *see* Zahn Decl. ¶ 15 ("I can state with certainty that neither I nor my husband is engaged in the business of collecting claims on defaulted bonds for the purpose of litigation."). But that conclusory assertion, along with Zahn's other averments about her and her husband's intent, requires a close examination of the facts surrounding their acquisition of the BL74 Bonds. *See Tr. for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 894 (N.Y. 2009) ("The inquiry into purpose is a factual one."). The necessity of that fact-intensive analysis illustrates why a unique defense can drain a plaintiff's attention and resources to the detriment of absent class members. And Zahn's ability to uphold her fiduciary duties to absent class members is further called into doubt by the fact that her husband, not she, drives her attorney interactions and investment decisions.

Finally, this case is distinguishable from Judge Cote's recent decision to certify a class in *Mazzaccone*. There, Judge Cote did not find any facts calling into question the proposed lead plaintiff's involvement in the case. *See Mazzaccone*, 2026 WL 444752, at *3. Moreover, despite asserting a champerty defense, Venezuela failed to put forward any argument that the proposed lead plaintiff "engaged directly or indirectly in the business of collection and adjustment of claims." *Id.* at *3 (citing N.Y. Jud. Law § 489(1)); *compare id. with* Opposition at 12-14 (challenging Zahn's assertion that she is not "directly or indirectly" in such a business and pointing to the timing sequence discussed above).

The Court emphasizes that, in denying class certification, the Court need not—and does not—resolve whether Zahn's acquisition of the BL74 Bonds falls within the champerty statute. To be sure, New York courts have long held that purchasing bonds "is not made illegal by the

existence of the intent . . . at the time of the purchase, which must always exist in the case of such purchases, to bring suit upon them if necessary for their collection." *Banque du Gestion Privee-Sib*, 787 F. Supp. at 57 (quoting *Moses v. McDivitt*, 88 N.Y. 62, 65 (N.Y. 1882)); *see id.* (explaining that concluding otherwise creates a "perverse result"). That said, Venezuela has presented a sufficiently meritorious argument based on the present record to show that the factual inquiry required to adjudicate the champerty defense risks "unacceptably detract[ing] from the focus of the litigation." *Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 1280640, at *4.

Because Zahn has failed to prove that she is a typical and adequate plaintiff to bring this class action, the Court need not consider whether she has satisfied Rule 23(b) and whether Duane Morris LLP is satisfactory class counsel, and thus denies her motion in its entirety.

* * *

To be clear, this ruling is highly fact-specific and does not suggest that any defendant seeking to defeat the certification of a class of its creditors can do so simply by raising a champerty defense. The unique-defense rule "is intended to protect [the] plaintiff class[,] not to shield defendants from a potentially meritorious suit." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y. 1992). Accordingly, and in light of the possibility that claims seeking to enforce the terms of the BL74 Bonds may now be time-barred,[3] the Court denies the motion without prejudice to another putative class member moving to replace Zahn as lead plaintiff within thirty days of this Opinion and Order. *See In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *9 (providing this option while recognizing that the plaintiff "is of course free to prosecute its claim individually").

---

[3] To avoid any ambiguity, the Court stresses that it does not reach this issue. *See supra* n.2.

### IV.  Conclusion

For the foregoing reasons, the Court denies Zahn's motion to certify a class, to appoint her as class representative, and to appoint Duane Morris LLP as class counsel.  Within thirty days of this Opinion and Order, another putative class member may move to be appointed lead plaintiff, to appoint class counsel, and to certify a class.  *See Weisman v. Darneille*, 78 F.R.D. 671, 673 (S.D.N.Y. 1978) ("Rejection of one plaintiff as an adequate class representative does not preclude [the Court's] granting class certification to another representative plaintiff." (citing *Brick v. CPC Int'l, Inc.*, 547 F.2d 185 (2d Cir. 1976)).  If none makes a motion, within seven days of that deadline Zahn shall file a letter advising whether she seeks to pursue this litigation individually.  The Clerk of Court is respectfully directed to close Docket Number 33.

SO ORDERED.

Dated: July 29, 2026
      New York, New York

_____
JOHN P. CRONAN
United States District Judge